STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@gibsonlowry.com
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
jdlowry@gibsonlowry.com

GIBSON LOWRY BURRIS LLP
City Center West
7201 West Lake Mead Boulevard
Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

Attorneys for Aloha

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALOHA DATA SYSTEMS, INC., a Nevada corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>JEROLD D. CIBLEY, an individual,<br><br>                    Defendant. | Case No.: 2:10-cv-0668<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

     Plaintiff Aloha Data Systems, Inc., a Nevada corporation ("Aloha"), complains as

follows against Jerold D. Cibley, an individual ("Mr. Cibley"), on information and belief:

1

## NATURE OF ACTION

1.      This is an action for false designation of origin and cybersquatting under the Lanham Act, mark infringement and misappropriation of trade secrets under Nevada statute, and misappropriation of licensable commercial property, misappropriation of confidential information, unjust enrichment, business disparagement, intentional interference with prospective economic relations under Nevada common law, and breach of contract.  These causes of action arise from Mr. Cibley's retention, following the termination of Mr. Cibley's contractual authority to act on behalf of Aloha, of World Wide Web domain names comprising Aloha's trademark and service mark STORETENDER, as well as from Mr. Cibley's ongoing use of Aloha's trade secrets and confidential information and Mr. Cibley's interference with Aloha's prospective economic relations with Panasonic System Networks Corporation of America, which interference has included disparagement of Aloha's business.

## PARTIES

2.      Aloha is, and has been at all times relevant to this lawsuit, a Nevada corporation with its principal place of business in Nevada.

3.      Aloha is, and has been at all times relevant to this lawsuit, in good standing with the Secretary of State of Nevada.

4.      Mr. Cibley is, and has been at all times relevant to this lawsuit, an individual domiciled in Massachusetts.

## JURISDICTION

5.      This Court has original jurisdiction over Aloha's First and Second Causes of Action pursuant to §39 of the Lanham Act (15 U.S.C. §1121) because Aloha's First and Second Causes of Action arise under the Lanham Act.

6.      This Court has supplemental jurisdiction over Aloha's Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action pursuant to 28 U.S.C. §1367 because Aloha's Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action are so related to Aloha's First and Second Causes of Action that Aloha's Third, Fourth,

Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has original jurisdiction over this entire action because the matter in controversy in this action exceeds the value of $75,000, exclusive of interests and costs, and this action is between citizens of different states.

8.     Personal jurisdiction over Mr. Cibley is proper because Mr. Cibley has purposefully directed Mr. Cibley's conduct at one or more residents of Nevada, which conduct has resulted in the injuries to Defendants alleged herein.

9.     Personal jurisdiction over Mr. Cibley is proper because Mr. Cibley has purposefully sent multiple communications, disparaging of Aloha's business, to multiple Aloha dealers, resellers, and customers, with the intent to cause injury to Aloha in Nevada.

10.     Personal jurisdiction over Mr. Cibley is proper because Mr. Cibley has purposefully sent at least one e-mail, disparaging of Aloha's business, to the president of Quadrox US, headquartered in Henderson, Nevada, a company with which Aloha is involved in a joint venture.

11.     Personal jurisdiction over Mr. Cibley is proper because Mr. Cibley has contractually assented to personal jurisdiction in Nevada for injunctive relief related to Aloha's Fifth and Tenth Causes of Action.

## **VENUE**

12.     This action is appropriately venued in the District of Nevada, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the District of Nevada.

13.     This action is appropriately venued in the District of Nevada, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of property that is the subject of this action is situated in the District of Nevada.

## **FACTS**

14.     Aloha is in the business of providing, without limitation, software and technical support services under the trademark and service mark STORETENDER (the "Aloha Mark").

15.     On April 13, 2009, Aloha and Mr. Cibley entered into a contract, entitled the "Channel Development Rep Agreement" (the "Cibley Contract"), appointing Mr. Cibley as an independent contractor to be engaged in promotion of the licensing by Aloha of goods and services offered by Aloha under the Aloha Mark.

16.     Section 6(a) of the Cibley Contract provides that:

> [Mr. Cibley] acknowledges that [he] has learned or may learn
> confidential and proprietary information belonging to [Aloha]
> including, without limitation, any [Aloha] Product or Service,
> programming techniques, know-now, database format, or other
> technical information.  [Mr. Cibley] also acknowledges that [he]
> has learned or may learn confidential information relating to
> pricing, marketing strategies and promotional strategies of [Aloha].

17.     Section 6(b) of the Cibley Contract provides that:

> [Mr. Cibley] agrees that during the Term hereof and at all times
> thereafter, except as specifically permitted herein or in a separate
> writing signed by [Aloha], [Mr. Cibley] shall not use,
> commercialize or disclose [Aloha]'s Confidential Information to
> any person or entity, except to [Mr. Cibley's] own employees
> having a "need to know" (and who themselves are bound by
> similar nondisclosure restrictions).  This Covenant Not to Disclose
> covers all particulars of the relationship between [Aloha] and [Mr.
> Cibley], including but not limited to any special terms or pricing
> that may be agreed upon in an addendum to this agreement.

4

18.     Section 6(c) of the Cibley Contract provides that:

> The parties acknowledge that [Mr. Cibley's] violation of the
> provisions of this Section 6 would cause irreparable harm to
> [Aloha] not adequately compensable by monetary damages.  In
> addition to other relief, it is agreed that preliminary and permanent
> injunctive relief shall be available to prevent any actual or
> threatened violation of such provisions.

19.     On or about September 13, 2009, Mr. Cibley registered the World Wide Web
domain name storetender.net through GoDaddy.Com, Inc., in Mr. Cibley's own name.

20.     Mr. Cibley did not have permission from Aloha to register the World Wide Web
domain name storetender.net, in Mr. Cibley's own name or otherwise.

21.     At all times since on or about September 13, 2009, Mr. Cibley has identified Mr.
Cibley as the administrative contact for the World Wide Web domain name storetender.net.

22.     Mr. Cibley did not have permission from Aloha to identify Mr. Cibley as the
administrative contact for the World Wide Web domain name storetender.net.

23.     At all times since on or about September 13, 2009, Mr. Cibley has claimed
ownership of the World Wide Web domain name storetender.net.

24.     Mr. Cibley does not have and has never had permission from Aloha to claim
ownership of the World Wide Web domain name storetender.net.

25.     On or about September 13, 2009, Mr. Cibley registered the World Wide Web
domain name storetender.biz through GoDaddy.Com, Inc.

26.     Mr. Cibley did not have permission from Aloha to register the World Wide Web
domain name storetender.biz.

27.     At all times since on or about September 13, 2009, Mr. Cibley has identified Mr.
Cibley as the administrative contact for the World Wide Web domain name storetender.biz
(collectively with storetender.net, the "Domain Names").

28.     Mr. Cibley did not have permission from Aloha to identify Mr. Cibley as the administrative contact for the World Wide Web domain name storetender.biz.

29.     At all times since on or about September 13, 2009, Mr. Cibley has claimed ownership of the World Wide Web domain name storetender.biz.

30.     Mr. Cibley does not have and has never had permission to claim ownership of the World Wide Web domain name storetender.biz.

31.     Since no later than April 1, 2010, Mr. Cibley has caused World Wide Web users entering the website address http://www.storetender.biz to be automatically redirected to the World Wide Web site located at http://www.storetender.net.

32.     On or about April 1, 2010, Aloha notified Mr. Cibley that, as a result of Mr. Farley's breach of the Cibley Contract, Mr. Cibley was no longer authorized to act on behalf of Aloha in any manner.

33.     Since on or about April 5, 2010, Mr. Cibley has caused the World Wide Web site at http://www.storetender.net (the "Website") to display messages disparaging to Aloha and to Aloha's principals, including, without limitation, a message that Aloha's president Mr. Ken Farley "is one of the best 'Con Men' [*sic*] I have ever encountered.  I gave him my heart and soul and he gave me the boot…."

34.     Since on or about April 5, 2010, Mr. Cibley has caused the Website to contain the representation, "This is my website."

35.     Since on or about April 5, 2010, via the Website, Mr. Cibley has offered the Aloha Domain Names for sale to any prospective purchaser.

36.     On or about April 12, 2010, Mr. Cibley caused to be sent to many of Aloha's customers an electronic mail message (the "April 12 E-mail") disparaging to Aloha and to Mr. Farley.

37.     The customer and business contact information Mr. Cibley used to send the April 12 E-mail constitutes confidential information owned by Aloha.

38.     Since Mr. Cibley sent the April 12 E-mail to Aloha customers, at least one Aloha customer has expressed to Aloha that customer's concerns about continuing to do business with Aloha.

6

39.     On or about April 21, 2010, Mr. Cibley caused to be sent to a number of Aloha's business relations, including the president of Quadrox, an e-mail offering to provide "the truth about the software" and "the truth about [Aloha president] Ken Farley" (the "April 21 E-mail) and offering to sell the Domain Names.

40.     The customer and business relation contact information Mr. Cibley used to send the April 21 E-mail constitutes confidential information owned by Aloha.

41.     On or about April 24, 2010, Mr. Cibley caused to be sent to a number of Aloha's dealers and resellers an electronic mail message (the "April 24 Class Action E-mail") disparaging to Aloha and to Mr. Farley, in which Mr. Cibley solicited Aloha dealers and resellers to take part in a class action lawsuit against Aloha "[i]f you are tired of putting up with the BS."

42.     The customer and business relation contact information Mr. Cibley used to send the April 24 Class Action E-mail constitutes confidential information owned by Aloha.

43.     On or about April 24, 2010, Mr. Cibley caused to be sent to many of Aloha's customers an electronic mail message (the "April 24 Research E-mail") stating that Mr. Cibley had "been doing a great deal of research," and directing the recipients of the April 24 Research E-mail to the Website.

44.     The April 24 Class Action E-mail invites readers to sign up for an e-mail newsletter propounded by Mr. Cibley and made available via the World Wide Web domain www.theposman.com.

45.     The World Wide Web site located at www.theposman.com ("Mr. Cibley's Website") constitutes an advertisement for Mr. Cibley's services as an installer of point-of-sale grocery checkout terminals and similar electronic equipment.

46.     The customer and business relation contact information Mr. Cibley used to send the April 24 Research E-mail constitutes confidential information owned by Aloha.

47.     On or about April 25, 2010, Mr. Cibley caused to be posted on the Website additional content disparaging to Aloha and to Mr. Farley (the "April 25 Content").

48.     In the April 25 Content, Mr. Cibley represents that Mr. Cibley "cannot find proof of" various software products written by Mr. Farley, and that Mr. Cibley has been "unable to find copyrights or trademarks on any of those products" (the "Copyright Representation")

7

49.     At least one software product written by Mr. Farley is the subject of a registration with the United States Copyright Office.

50.     In the April 25 Content, Mr. Cibley asks the rhetorical question, "If Ken Farley wrote the WIC program for the state of Illinois, why can't I find any record of such?" and provides the rhetorical "answer" that "Maybe nobody told the state of Illinois…" (the "Illinois Representation").

51.     Neither Mr. Farley nor Aloha has ever claimed that Mr. Farley "wrote the WIC program for the state of Illinois."

52.     In the April 25 Content, Mr. Cibley alleges that Mr. Farley sold a company formerly owned by Mr. Farley, Southwest Management Systems, to a Mr. Cung Phan, and that "[u]pon the completion of the sale, Farley and his sales manager disappeared leaving Cung and his staff to pick up the pieces" (the "Phan Representation")

53.     Mr. Farley did not sell Southwest Management Systems to Mr. Phan.

54.     In the April 25 Content, Mr. Cibley asks the rhetorical question, "Is StoreTender Certified For WIC in Texas?" and reprints an e-mail to Mr. Cibley from a Texas state agency employee in which that Texas state agency employee states that StoreTender is not so certified (the "Texas Representation").

55.     Neither Mr. Farley nor Aloha have ever claimed that the goods and services sold under the Aloha Mark are certified by the Texas state agency administering the Texas WIC program.

56.     In the April 25 Content, Mr. Cibley invites viewers to access Mr. Cibley's Website.

57.     In the April 25 Content, Mr. Cibley continues to offer the Domain Names for sale.

58.     Since the posting of the April 25 Content, Mr. Cibley has sent e-mails to multiple resellers and users of the goods and services sold under the Aloha Mark directing those resellers and users to access the Website and to view the April 25 Content.

59.     Since the posting of the April 25 Content, multiple resellers and users of the goods and services sold under the Aloha Mark have contacted Aloha and Mr. Farley to express those resellers' and users' concerns that Aloha and Mr. Farley have been untruthful in Aloha's

and Mr. Farley's public representations regarding Aloha's and Mr. Farley's qualifications and experience.

60.     Since no later than March 31, 2010, Aloha has been engaged in negotiations with Panasonic System Networks Company of America ("Panasonic") with respect to a contract under which software to be furnished by Aloha under the Aloha Mark will be included in a software package to be sold by Panasonic (the "Potential Panasonic Contract").

61.     Prior to Aloha's termination of the Cibley Contract, Mr. Cibley was involved in Aloha's negotiations with Panasonic with respect to the Potential Panasonic Contract.

62.     On or about April 23, 2010, Mr. Cibley caused to be sent to Mr. Kamal Boiri, an employee of Panasonic engaged in negotiations with Aloha with respect to the Potential Panasonic Contract, an electronic mail message (the "Panasonic E-Mail") stating, "I found out a lot more about Ken Farley and his other Con jobs" (capitalization *sic*) and directing Mr. Boiri to the Websites.

63.     As a result of, at a minimum, Mr. Cibley's sending of the Panasonic E-Mail to Mr. Boiri, Panasonic has made the decision not to utilize the Aloha Mark in connection with software to be furnished to Panasonic by Aloha and thereafter sold by Panasonic.

64.     On or about May 3, 2010, Mr. Cibley caused to be sent to multiple product managers at Panasonic e-mails directing those e-mail recipients to access the Website and to view the April 25 Content.

<u>**FIRST CAUSE OF ACTION**</u>

<u>**FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT,**</u>

<u>**15 U.S.C. §1125(a)(1)(A)**</u>

65.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 64 above.

66.     Mr. Cibley is using and/or has used the Aloha Mark in commercial advertising and promotion in connection with goods and/or services, in a manner that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation or association of Mr. Cibley with

Aloha, or as to the origin of Mr. Cibley's goods, services, or commercial activities (the "Infringing Use").

67. The Infringing Use constitutes a false designation of origin and a false description and representation of Mr. Cibley's and Aloha's business and goods and/or services, which has damaged and will continue to damage the reputation and goodwill of Aloha established in connection with the Aloha Mark, in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

68. Aloha has sustained actual damages as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

69. Mr. Cibley has profited as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

70. Mr. Cibley is liable to Aloha for up to three times Aloha's actual damages, plus Mr. Cibley's profits, resulting from the Infringing Use.

71. Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

72. Unless Mr. Cibley is preliminarily and permanently enjoined from further misuse of the Aloha Mark, Aloha will continue to be irreparably harmed, and Aloha is thus entitled to preliminary and permanent injunctive relief against further infringement by Mr. Cibley of the Aloha Mark, pursuant to §34 of the Lanham Act (15 U.S.C. §1116).

73. Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action, pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

74. Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

### SECOND CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT,

### 15 U.S.C. §1125(a)(1)(B)

75.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 74 above.

76.     Mr. Cibley is using and/or has used the Aloha Mark in commercial advertising and promotion in connection with goods and/or services, in a manner that misrepresents the nature, characteristics, and qualities of Mr. Cibley's and Aloha's goods, services, and commercial activities (the "Misdescriptive Use"), specifically by claiming that the Website and the Domain Names belong to Mr. Cibley.

77.     The Misdescriptive Use constitutes a false designation of origin and a false description and representation of Mr. Cibley's and Aloha's business and goods and/or services, which has damaged and will continue to damage the reputation and goodwill of Aloha established in connection with the Aloha Mark, in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

78.     Aloha has sustained actual damages as a direct and proximate result of the Misdescriptive Use, and Mr. Cibley is liable to Aloha for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

79.     Mr. Cibley has profited as a direct and proximate result of the Misdescriptive Use, and Mr. Cibley is liable to Aloha for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

80.     Mr. Cibley is liable to Aloha for up to three times Aloha's actual damages, plus Mr. Cibley's profits, resulting from the Misdescriptive Use.

81.     Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

82.     Unless Mr. Cibley is preliminarily and permanently enjoined from further misuse of the Aloha Mark, Aloha will continue to be irreparably harmed, and Aloha is thus entitled to

11

preliminary and permanent injunctive relief against further infringement by Mr. Cibley of the Aloha Mark, pursuant to §34 of the Lanham Act (15 U.S.C. §1116).

83.     Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action, pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

84.     Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

### THIRD CAUSE OF ACTION

### CYBERSQUATTING UNDER THE LANHAM ACT, 15 U.S.C. §1125(d)

85.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 84 above.

86.     Mr. Cibley committed Mr. Cibley's acts as alleged herein with a bad-faith intent to profit from the Aloha Mark by registering, trafficking in, and/or using the Infringing Domain Name and engaging in the Infringing Use.

87.     The Infringing Domain Name is identical to the Aloha Mark, and the Aloha Mark had acquired distinctiveness at the time Mr. Cibley registered the Infringing Domain Name.

88.     Mr. Cibley's registration of the Infringing Domain Name violates §43(d) of the Lanham Act (15 U.S.C. §1125(d)).

89.     Mr. Cibley's use of the Infringing Mark violates §43(d) of the Lanham Act (15 U.S.C. §1125(d)).

90.     Aloha has sustained actual damages as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those actual damages pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

91.     Mr. Cibley has profited as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those profits pursuant to §35 of the Lanham Act (15 U.S.C. §1117).

92.     Mr. Cibley is liable to Aloha for up to three times Aloha's actual damages, plus Mr. Cibley's profits, resulting from the Infringing Use, or, in the alternative, to statutory damages of no less than $1,000 and no more than $1,000,000.

93.     Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

94.     Aloha is entitled to preliminary and permanent injunctive relief against further infringement by Mr. Cibley of the Aloha Mark, pursuant to 15 U.S.C. §1116.

95.     Aloha is entitled to an order from this Court directing transfer of the Infringing Domain Name to Aloha, pursuant to 15 U.S.C. §1125(d)(1)(C).

96.     Aloha has been required to retain an attorney to prosecute this action, and Defendants are liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action, pursuant to 15 U.S.C. §1117.

97.     Aloha has incurred costs of suit in connection with bringing this action, and Defendants are liable to Aloha for those costs of suit pursuant to 15 U.S.C. §1117.

## FOURTH CAUSE OF ACTION

## MARK INFRINGEMENT UNDER NEVADA COMMON LAW

98.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 97 above.

99.     The Infringing Use is likely to cause confusion, cause mistake, or deceive consumers and the public with respect to the goods and/or services offered in commerce by Mr. Cibley, in violation of the common law of the State of Nevada.

100.    The Infringing Use has damaged and will continue to damage the reputation and goodwill of Aloha established in connection with the Mark.

101.    Mr. Cibley engaged in the Infringing Use oppressively, fraudulently, and maliciously.

102.    Aloha has sustained actual damages as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those actual damages.

13

103.     Mr. Cibley has profited as a direct and proximate result of the Infringing Use, and Mr. Cibley is liable to Aloha for the amount of those profits.

104.     Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

105.     Unless Mr. Cibley is preliminarily and permanently enjoined from further infringement by Mr. Cibley of the Aloha Mark, Aloha will be irreparably harmed, and Aloha is thus entitled to preliminary and permanent injunctive relief against further infringement by Mr. Cibley of the Aloha Mark.

106.     Mr. Cibley's fraudulence, maliciousness, and oppressiveness in engaging in the Infringing Use entitles Aloha to punitive damages pursuant to NRS 42.005.

107.     Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action.

108.     Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit.

## FIFTH CAUSE OF ACTION

## MISAPPROPRIATION OF CONFIDENTIAL INFORMATION UNDER NEVADA COMMON LAW

109.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 108 above.

110.     Aloha owns confidential and proprietary information, including, without limitation, confidential and proprietary information regarding Aloha's products and services, programming techniques, know-how, database format, and other technical information, and confidential information regarding Aloha's pricing, marketing strategies, and promotional activities (the "Aloha Confidential Information").

111.    Mr. Cibley acquired knowledge of the Aloha Confidential Information under circumstances giving rise to a duty on Mr. Cibley's part to maintain the secrecy of the Aloha Confidential Information and to limit the use of the Aloha Confidential Information.

112.    Mr. Cibley covenanted in the Cibley Contract not to use, commercialize, or disclose the Aloha Confidential Information.

113.    Since on or about April 1, 2010, Mr. Cibley has used, commercialized, and disclosed the Aloha Confidential Information in violation of the Cibley Contract.

114.    Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

115.    Unless Mr. Cibley is preliminarily and permanently enjoined from further misappropriation by Mr. Cibley of the Aloha Trade Secrets, Aloha will be irreparably harmed, and Aloha is thus entitled to preliminary and permanent injunctive relief against further infringement by Mr. Cibley of the Aloha Trade Secrets, pursuant to §6(c) of the Cibley Contract.

## SIXTH CAUSE OF ACTION

## MISAPPROPRIATION OF LICENSABLE COMMERCIAL PROPERTY UNDER NEVADA COMMON LAW

116.    Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 115 above.

117.    Aloha has invested significant time, effort, and money in creating, publicizing, and protecting the Aloha Mark and developing the valuable goodwill arising from and associated with the Aloha Mark (collectively the "Commercial Property").

118.    Aloha has licensed and continues to license the Commercial Property in return for value.

119.    The Infringing Mark is a commercial property that may be licensed for value.

120.    The Domain Names are commercial properties that may be licensed for value.

121.    Mr. Cibley does not have the legal right, authority, or license to use the Infringing Mark.

122.    Mr. Cibley does not have the legal right, authority, or license to use the Infringing Domain Name.

123.    Mr. Cibley's wrongful use of the Infringing Mark, undertaken without authority from Aloha, deprived Aloha of the commercial value of the Infringing Mark.

124.    Mr. Cibley's wrongful use of the Domain Names, undertaken without authority from Aloha, deprived Aloha of the commercial value of the Domain Names.

125.    Aloha has sustained and will continue to sustain damages as a direct and proximate result of Mr. Cibley's misappropriation of Aloha's licensable Commercial Property, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

126.    Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

127.    Aloha is entitled to preliminary and permanent injunctive relief against further misappropriation by Mr. Cibley of Aloha's licensable Commercial Property.

128.    Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action.

129.    Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit.

## **SEVENTH CAUSE OF ACTION**

## **UNJUST ENRICHMENT UNDER NEVADA COMMON LAW**

130.    Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 129 above.

131.    Aloha owns the Aloha Mark.

132.    Mr. Cibley does not have authority to use the Aloha Mark.

133.    Mr. Cibley's use of the Domain Names is in furtherance of Mr. Cibley's own economic gain by directing consumers and the public to Mr. Cibley's websites and businesses.

16

134.   Mr. Cibley's use of the Infringing Mark is in furtherance of Mr. Cibley's own economic gain by directing consumers and the public to Mr. Cibley's websites and businesses.

135.   Mr. Cibley accepted and retained all of the profits and benefits of Mr. Cibley's unauthorized use of the Infringing Mark.

136.   Mr. Cibley accepted and retained all of the profits and benefits of Mr. Cibley's unauthorized use of the Infringing Domain Name.

137.   As a result of Mr. Cibley's acts as alleged herein, Aloha has suffered and will continue to suffer damage to Aloha's business, goodwill, reputation, and profits, while Mr. Cibley profits at Aloha's expense.

138.   Aloha is entitled to recover an amount by which Mr. Cibley has been unjustly enriched through Mr. Cibley's unauthorized use of the Infringing Mark.

139.   Aloha is entitled to recover an amount by which Mr. Cibley has been unjustly enriched through Mr. Cibley's unauthorized use of the Infringing Domain Name.

## EIGHTH CAUSE OF ACTION

## BUSINESS DISPARAGEMENT UNDER NEVADA COMMON LAW—PHAN REPRESENTATION

140.   Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 139 above.

141.   The Phan Representation is false.

142.   The Phan Representation casts doubt upon the goodwill and integrity of Aloha's president, Mr. Farley.

143.   The Phan Representation casts doubt upon the goodwill and integrity of Aloha.

144.   Mr. Cibley intended for the Phan Representation to cast doubt upon the goodwill and integrity of Mr. Farley.

145.   Mr. Cibley intended for the Phan Representation to cast doubt upon the goodwill and integrity of Aloha.

146.   Mr. Cibley published the Phan Representation without any privilege or justification.

147.   Mr. Cibley published the Phan Representation maliciously, fraudulently, and oppressively.

148.   As a result of Mr. Cibley's publication of the Phan Representation, Aloha has sustained actual damages.

149.   As a result of Mr. Cibley's publication of the Phan Representation, Aloha will continue to suffer damage to Aloha's business, goodwill, reputation, and profits, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

150.   Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

151.   Aloha is entitled to preliminary and permanent injunctive relief against further business disparagement by Mr. Cibley.

152.   Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action.

153.   Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit.

## NINTH CAUSE OF ACTION

## BUSINESS DISPARAGEMENT UNDER NEVADA COMMON LAW—COPYRIGHT REPRESENTATION, ILLINOIS REPRESENTATION, AND TEXAS REPRESENTATION

154.   Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 153 above.

155.   The Copyright Representation is unjust and malicious.

156.   The Copyright Representation casts doubt upon the goodwill and integrity of Aloha's president, Mr. Farley.

157.   The Copyright Representation casts doubt upon the goodwill and integrity of Aloha.

18

158.    Mr. Cibley intended for the Copyright Representation to cast doubt upon the goodwill and integrity of Mr. Farley.

159.    Mr. Cibley intended for the Copyright Representation to cast doubt upon the goodwill and integrity of Aloha.

160.    Mr. Cibley published the Copyright Representation without any privilege or justification.

161.    Mr. Cibley published the Copyright Representation maliciously, fraudulently, and oppressively.

162.    As a result of Mr. Cibley's publication of the Copyright Representation, Aloha has sustained actual damages.

163.    As a result of Mr. Cibley's publication of the Copyright Representation, Aloha will continue to suffer damage to Aloha's business, goodwill, reputation, and profits, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

164.    The Illinois Representation is unjust and malicious.

165.    The Illinois Representation casts doubt upon the goodwill and integrity of Aloha's president, Mr. Farley.

166.    The Illinois Representation casts doubt upon the goodwill and integrity of Aloha.

167.    Mr. Cibley intended for the Illinois Representation to cast doubt upon the goodwill and integrity of Mr. Farley.

168.    Mr. Cibley intended for the Illinois Representation to cast doubt upon the goodwill and integrity of Aloha.

169.    Mr. Cibley published the Illinois Representation without any privilege or justification.

170.    Mr. Cibley published the Illinois Representation maliciously, fraudulently, and oppressively.

171.    As a result of Mr. Cibley's publication of the Illinois Representation, Aloha has sustained actual damages.

172.   As a result of Mr. Cibley's publication of the Illinois Representation, Aloha will continue to suffer damage to Aloha's business, goodwill, reputation, and profits, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

173.   The Texas Representation is unjust and malicious.

174.   The Texas Representation casts doubt upon the goodwill and integrity of Aloha's president, Mr. Farley.

175.   The Texas Representation casts doubt upon the goodwill and integrity of Aloha.

176.   Mr. Cibley intended for the Texas Representation to cast doubt upon the goodwill and integrity of Mr. Farley.

177.   Mr. Cibley intended for the Texas Representation to cast doubt upon the goodwill and integrity of Aloha.

178.   Mr. Cibley published the Texas Representation without any privilege or justification.

179.   Mr. Cibley published the Texas Representation maliciously, fraudulently, and oppressively.

180.   As a result of Mr. Cibley's publication of the Texas Representation, Aloha has sustained actual damages.

181.   As a result of Mr. Cibley's publication of the Texas Representation, Aloha will continue to suffer damage to Aloha's business, goodwill, reputation, and profits, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

182.   Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

183.   Aloha is entitled to preliminary and permanent injunctive relief against further business disparagement by Mr. Cibley.

184.   Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action.

185.     Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit.

## TENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS UNDER NEVADA COMMON LAW

186.     Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 185 above.

187.     Mr. Cibley was aware of a prospective contractual relationship between Aloha and Panasonic.

188.     By sending the Panasonic E-Mail to Mr. Boiri, Mr. Cibley intended to harm Aloha by preventing Aloha from entering into a contractual relationship with Panasonic.

189.     Mr. Cibley had no justification for sending the Panasonic E-Mail to Mr. Boiri other than Mr. Cibley's intent to harm Aloha by preventing Aloha from entering into a contractual relationship with Panasonic.

190.     No privilege applies to Mr. Cibley with respect to Mr. Cibley's sending of the Panasonic E-Mail to Mr. Boiri.

191.     Aloha has suffered and will continue to suffer damage to Aloha's business, goodwill, reputation, and profits as a direct and proximate result of Mr. Cibley's sending the Panasonic E-Mail to Mr. Boiri, and Mr. Cibley is liable to Aloha for the amount of those present and future damages.

192.     Mr. Cibley's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Aloha in an amount Aloha cannot ascertain, leaving Aloha with no adequate remedy at law.

193.     Aloha is entitled to preliminary and permanent injunctive relief against further interference by Mr. Cibley with Aloha's prospective contractual relationships.

194.     Aloha has been required to retain an attorney to prosecute this action, and Mr. Cibley is liable to Aloha for Aloha's attorney fees incurred in connection with the prosecution of this action.

21

195.    Aloha has incurred costs of suit in connection with bringing this action, and Mr. Cibley is liable to Aloha for those costs of suit.

### ELEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT

196.    Aloha repeats and realleges the allegations set forth in Paragraphs 1 through 195 above.

197.    The Cibley Contract is a written agreement calling for the parties thereto to exchange goods, acts, or forbearances of value.

198.    Mr. Cibley executed the Cibley Contract.

199.    Aloha performed or was excused from performing all acts required of Aloha pursuant to the Cibley Contract.

200.    Mr. Cibley failed to perform Mr. Cibley's obligations as provided for in and arising out of the Cibley Contract by failing to meet the performance quotas required by the Cibley Contract.

201.    Mr. Cibley failed to perform Mr. Cibley's obligations as provided for in and arising out of the Cibley Contract by misappropriating Aloha's confidential information in violation of the Cibley Contract.

202.    As a result of Mr. Cibley's breaches of the Cibley Contract, Aloha has suffered economic losses..

203.    Mr. Cibley could foresee that Aloha would incur attorneys' fees and sustain costs of suit in prosecuting Mr. Cibley's breach of the Cibley Contract, and Mr. Cibley is thus liable for Aloha's attorneys' fees and costs incurred herein as a result of those breaches.

### PRAYER FOR RELIEF

Aloha requests that this Court grant Aloha's claims for relief herein as follows:

1.    Preliminarily and permanently enjoin and restrain Mr. Cibley, and Mr. Cibley's officers, agents, servants, employees, attorneys, parents, subsidiaries, related

companies, partners, and all persons acting for, by, with, through, or under Mr. Cibley, from:

    a.    Directly or indirectly infringing the Aloha Mark by marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, or causing the marketing, offering, selling, disposing, licensing, leasing, transferring, displaying, advertising, reproducing, exhibiting, exploiting, developing, manufacturing, or linking of any goods or services derived from or bearing the Aloha Mark, or to order, direct, participate in, or assist in any such activity;

    b.    Using in any manner the Aloha Mark and any term or terms likely to cause confusion therewith, including, without limitation, the Infringing Mark (STORETENDER) and any variant thereof, in connection with the retrieval of data or information on Mr. Cibley's other goods or services, or in connection with the advertising or promotion of Mr. Cibley's goods, services, or websites, or ordering, directing, participating in, or assisting in any such use; and

    c.    Possessing or using in any manner any trade secrets or confidential information belonging to Aloha;

2.    Direct Mr. Cibley to preserve, retain, and deliver to Aloha's counsel in hard copies or electronic copies:

    a.    All evidence and documentation relating in any way to Mr. Cibley's use of the Infringing Mark and the Aloha Mark, in any form, including, without limitation, all such evidence and documentation relating to the Website, or to any other websites relating to the Infringing Mark;

    b.    All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom Mr. Cibley has communicated regarding Mr. Cibley's use of the Infringing Mark; and

      c.     All financial evidence and documentation relating to the Website, and any services, products, and/or advertising that appear or are offered on or through the Website, to the extent such financial evidence and documentation relates to Mr. Cibley's use of the Infringing Mark;

3.     Direct Mr. Cibley to file with this Court and serve upon Aloha's counsel, within 30 days after entry of injunctive relief against Mr. Cibley, a report in writing, under oath, setting forth in detail the manner and form in which Mr. Cibley complied with such injunction, pursuant to 15 U.S.C. §1116(a);

4.     Direct Mr. Cibley to transfer the Domain Names to Aloha;

5.     Direct GoDaddy, Inc. or any successor registrar of the Domain Names to lock the Domain Names and transfer the Domain Names to Aloha;

6.     Enjoin Mr. Cibley from engaging in any further unlawful and/or wrongful acts as alleged herein, including, without limitation, false designation of origin or cybersquatting as set forth in the Lanham Act, 15 U.S.C. §1051 *et seq.,* and any mark infringement, misappropriation of commercial property, misappropriation of trade secrets, misappropriation of confidential information, unjust enrichment, business disparagement, and intentional interference with Aloha's prospective contractual relationships in derogation of Nevada law;

7.     Direct Mr. Cibley to produce an accounting of Mr. Cibley's profits derived through any of the acts alleged herein;

8.     Award Aloha Mr. Cibley's profits derived from the use of the Infringing Mark and three times Aloha's damages suffered by reason of Mr. Cibley's willful and wrongful acts, and/or, pursuant to 15 U.S.C. §1117, award Aloha statutory damages of no less than $1,000.00 as a result of Mr. Cibley's wrongful acts,

9.     Award Aloha general damages and punitive damages;

10.    Award Aloha costs, disbursements, and attorneys' fees incurred in bringing this action;

11.    Award Aloha pre- and post-judgment interest in accordance with applicable law; and

12.     Grant Aloha such other relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Aloha requests a trial by jury pursuant to Fed.R.Civ.P. 38 with respect to all claims herein so triable.

Dated this seventh day of May, 2010.

GIBSON LOWRY BURRIS LLP

By:     /s/J.D. Lowry
        Steven A. Gibson
        Nevada Bar No. 6656
        Jodi Donetta Lowry
        Nevada Bar No. 7798
        7201 West Lake Mead Boulevard, Suite 503
        Las Vegas, Nevada 89128
        Attorneys for Aloha

25